UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>Plaintiff(s),<br><br>v.<br><br>ANTELOPE CANYON HOMEOWNERS ASSOCIATION, et al.,<br><br>Defendant(s). | Case No. 2:15-CV-1423 JCM (PAL)<br><br>ORDER |

Presently before the court is U.S. Bank National Association, as trustee for the holders of the WMALT 20060-AR8 trust ("U.S. Bank"); Bank of America, N.A. ("BOA"); and Nationstar Mortgage LLC's ("Nationstar") (collectively "the Banks") motion for summary judgment (ECF No. 39). SFR Investment Pool 1, LLC ("SFR") filed a response (ECF No. 45), to which the Banks replied (ECF No. 48).

Also before the court is SFR's motion for summary judgment. (ECF No. 40). The Banks filed a response (ECF No. 47), to which SFR replied (ECF No. 49).

Finally, the court also considers SFR's motion to certify a question of law to the Nevada Supreme Court. (ECF No. 66). The Banks filed a response (ECF No. 67), to which SFR replied (ECF No. 68).

**I.    Facts**

This case involves a dispute over real property located at 3761 Tohono Canyon Street, Las Vegas, Nevada 89147 (the "property"). (ECF No. 3).

**James C. Mahan**
**U.S. District Judge**

On May 1, 2006, crossdefendant Gail Bundy ("Bundy") obtained a loan in the amount of $207,200.00 from Countrywide Home Loans, Inc. and purchased the property. (*Id.*). The loan was secured by a deed of trust recorded May 3, 2006. (*Id.*).

The deed of trust was assigned to BAC Home Loans Servicing, LP ("BAC") via a corporate assignment deed of trust.[1] (*Id.*). The senior deed of trust was then assigned to U.S. Bank via an assignment deed of trust. (*Id.*).

On October 20, 2010, Alessi & Koenig ("A&K"), acting on behalf of Antelope Canyon Homeowners Association ("the HOA"), recorded a notice of delinquent assessment lien, stating an amount due of $1,275.00. (*Id.*). On January 31, 2011, A&K recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $2,505.00. (*Id.*).

In April 2011, BAC and its counsel requested a payoff ledger that specified the superpriority and subpriority lien amounts. (*Id.*). A&K responded with a ledger that had the total amount but did not specify the amount of the superpriority portion. (*Id.*). Because the superpriority portion was not specified, BAC and its counsel calculated the nine months of assessments and determined the superpriority amount to be $1,440.00. (*Id.*). On April 22, 2011, BAC tendered that amount to the HOA and included restrictive terms and conditions with the amount. (*Id.*). The HOA refused the payment and foreclosed on the property on December 5, 2012. (*Id.*).

On February 14, 2013, a foreclosure deed in favor of the HOA was recorded. (*Id.*). The HOA purchased the property for $8,680.00. (ECF No. 39-8).

On March 13, 2013, the HOA recorded a quitclaim deed transferring its interest in the property to SFR. (ECF No. 39-9).

On July 27, 2015, U.S. Bank filed a complaint against SFR and the HOA, alleging four causes of action: (1) quiet title/declaratory judgment against all parties; (2) breach of Nevada Revised Statute ("NRS") 116.1113 against the HOA; (3) wrongful foreclosure against the HOA; and (4) injunctive relief against SFR. (ECF No. 3).

---

[1] BAC was formerly known as Countrywide Home Loans Servicing, LP.

**James C. Mahan**
**U.S. District Judge**

- 2 -

On August 18, 2015, SFR filed a counterclaim against U.S. Bank and a crossclaim against BOA, Nationstar, Wells Fargo Bank, and Bundy alleging three causes of action: (1) declaratory relief/quiet title against all parties; (2) preliminary and permanent injunction against all parties; and (3) slander of title against U.S. Bank and Nationstar.  (ECF No. 11).

In the instant motions, the Banks and SFR move for summary judgment (ECF Nos. 39, 40), and SFR moves to certify a question of law to the Nevada Supreme Court (ECF No. 66).  The court will address each motion in turn.[2]

## II. Legal Standards

### A. Summary Judgment

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party.  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990).  However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis.  The moving party must first satisfy its initial burden.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to

---

[2] As an initial matter, the court takes judicial notice of the following recorded documents: first deed of trust (ECF No. 39-1); notice of delinquent assessment (ECF No. 39-4); notice of default and election to sell (ECF No. 39-5); notice of trustee's sale (ECF No. 39-6); trustee's deed upon sale (ECF No. 39-8); and quitclaim deed (ECF No. 39-9).  *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

**James C. Mahan**
**U.S. District Judge**

its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**James C. Mahan**
**U.S. District Judge**

- 4 -

**B. Certify Question of Law to the Nevada Supreme Court**

The Nevada Rules of Appellate Procedure provide that the Supreme Court of Nevada has the power to answer "questions of [state] law . . . which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of [Nevada]." Nev. R. App. P. 5(a).

The Nevada Supreme Court "may answer questions of law certified [. . .] by a federal court when (1) [the] answers to the certified questions may be determinative of part of the federal case, (2) there is no clearly controlling Nevada precedent, and (3) the answers to the certified questions will help settle important questions of law. *See, e.g.*, *Hartford Fire Ins. Co. v. Tr. of Const. Indus.*, 208 P.3d 884, 888 (Nev. 2009).

Where the question does not impact the merits of a claim pending before the certifying court, the question should not be certified to the Nevada Supreme Court. *See* Nev. R. App. P. 5(a) (requiring that certified question be "determinative"); *see also Volvo Cars of N. Am., Inc. v. Ricci*, 137 P.2d 1161, 1164 (Nev. 2006) (declining to answer certified questions where "answers to the questions posed [] would not 'be determinative' of any part of the case"). "The certification procedure is reserved for state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts." *Kremen v. Cohen*, 325 F.3d 1035, 1037 (9th Cir. 2003).

Federal courts have discretion to certify questions of state law. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). "Resort to certification is not mandatory where state law is unclear on a particular issue." *Carolina Cas. Ins. Co. v. McGhan*, 572 F. Supp. 2d 1222, 1225 (D. Nev. 2008) (citing *Lehman Bros.*, 416 U.S. at 390–91). Generally, "[w]hen a decision turns on applicable state law and the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993).

Further, a federal court may decline to certify a question where controlling precedent is available for guidance. *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1041 (9th Cir. 2014); *see also Kehoe v. Aurora Loan Servs., LLC*, No. 3:10-cv-256-RCJ-RAM; 2010 WL

4286331, at *11 (D. Nev. Oct. 20, 2010) (declining to certify question to Nevada Supreme Court where statutory language was sufficiently clear for the court to apply).

Finally, a party must show "particularly compelling reasons" for certification when that party first requests it after losing on an issue. *Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984) ("Ordinarily such a movant should not be allowed a second chance at victory when, as here, the district court employed a reasonable interpretation of state law.").

### III. Discussion

#### A. Motions for Summary Judgment (ECF Nos. 39, 40)

In its motion, SFR moves for summary judgment on its cross/counterclaims for quiet title, preliminary and permanent injunction, and slander of title (ECF No. 40), whereas the Banks move for summary judgment on U.S. Bank's quiet title/declaratory judgment claim, breach of NRS 116.1113, wrongful foreclosure, and injunctive relief claim as well as SFR's cross- and counterclaims. (ECF No. 39).

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

SFR asserts that summary judgment in its favor is proper because, *inter alia*, the foreclosure sale extinguished U.S. Bank's deed of trust pursuant to NRS 116.3116 and *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 412–14 (Nev. 2014) ("*SFR Investments*") and because U.S. Bank has not met the fraud, unfairness, or oppression requirement to equitably set

James C. Mahan
U.S. District Judge

- 6 -

aside a foreclosure sale as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105, 1112 (Nev. 2016) ("*Shadow Wood*").  (ECF No. 40).

The Banks echo some of SFR's arguments in their motion for summary judgment, asserting that summary judgment is appropriate against SFR's quiet title action.  (ECF No. 39).  The Banks argue that summary judgment as to the quiet title claim should be granted on their behalf because the superpriority payment amount was tendered, the initial foreclosure sale was invalid, and because the Banks are entitled to equitable relief under *Shadow Wood*.  (*Id.*).  The Banks further argue that summary judgment should be granted on their behalf because the HOA did not authorize its agent to foreclose on the property, rendering the foreclosure sale invalid, and the HOA violated NRS 116's good faith and fair dealings clause by not providing BAC with the superpriority lien amount.  (*Id.*).

If this court finds a properly conducted foreclosure sale, only through equity will the Banks prevail.  However, "a court of equity acts with caution."  *Hurley v. Kincaid*, 285 U.S. 95, 104 n.3 (1932).  Indeed, the court finds that exercising such caution is warranted in this case.

### 1. Deed Recitals and NRS 116.3116

Section 116.3116(1) of the NRS gives HOAs the ability to place a lien on homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent."  Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests.  *See* Nev. Rev. Stat. § 116.3116(2).  In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece.  The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust.  The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

**James C. Mahan**
**U.S. District Judge**

- 7 -

Chapter 116 of the NRS permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id*. at 415. Thus, "NRS 116.3116(2) gives an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166[3] provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[4] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood*, 366 P.3d at 1105. Nevertheless, courts retain the equitable authority to consider quiet title actions when an HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

---

[3] All references to the statute are to the version prior to the 2015 amendments, which was the law in place at the time of the relevant events.

[4] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

Here, the HOA complied with the statute and the deed recitals. The HOA provided the recorded trustee's deed upon sale, the recorded notice of delinquent assessment, the recorded notice of default and election to sell, and the recorded notice of trustee's sale. (ECF No. 40). The HOA waited 90 days between the notice of default and election to sell, and the notice of trustee's foreclosure sale. (*Id.*). Further, U.S. Bank does not contest that BAC received notice pursuant to NRS 116.31166(c). (*Id.*). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See Shadow Wood*, 366 P.3d at 1105 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle the HOA to success on its quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, action to quiet title). Thus, the question remains whether defendants have demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.* "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*. at 1115

### 2. *Unauthorized Sale of the Property by A&K*

The Banks argue that the foreclosure sale is invalid because A&K both foreclosed on the property and sold it without the HOA's explicit authorization. (ECF No. 39). The Banks further argue that the foreclosure sale was invalid without this explicit authorization. (*Id.*). The court disagrees with the Banks.

"Under Nevada law, an apparent agency is created when there is authority which a principal holds his agent out as possessing or permits him to exercise or to represent himself as possessing,

James C. Mahan
U.S. District Judge

under such circumstances as to estop the principal from denying its existence." *Nevada Power Co. v. Monsanto Co.*, 891 F.Supp. 1406, 1418 (D. Nev. 1995). "A duty to speak arises when another is or may come under a misapprehension regarding the authority of the principal's agent." *Goldstein v. Hanna*, 635 P.2d 290, 292 (Nev. 1981).

When such a misapprehension arises, it is the principal's duty to correct the agent as to what power the agent has been afforded. *Id.* "Persons ordinarily express dissent to acts done on their behalf which they have not authorized or of which they do not approve. . . ." *Id.* at 293 (quoting Restatement (Second) of Agency § 43 (1958)). Thus, if the principal does not correct the agent and express dissent regarding an unauthorized action, then the court will presume that the principal had, in fact, granted the agent with that authority. *See id.*

Here, the Banks argue that A&K acted outside of its authority given by the HOA. (ECF No. 39). The undisputed evidence that is provided for this argument is a deposition of Larry Blackwelder, a representative for the HOA. (ECF No. 39-7). In the deposition, Blackwelder asserts that the HOA did not authorize the foreclosure and the sale. (*Id.*). However, Blackwelder states that the HOA often did not authorize foreclosures and sales of property. (*Id.*). Since the HOA did not express dissent from this common practice by A&K, as a matter of law the court will presume that the HOA had granted A&K this authority. Furthermore, no evidence indicating that the HOA has filed an action against A&K has been presented or has expressed any additionally dissent regarding A&K's sale of this property.

### 3. *Rejected Tender*

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of*

**James C. Mahan
U.S. District Judge**

*Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues ***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

U.S. Bank argues that its predecessor BAC attempted to pay the superpriority amount of the lien, but BAC could not determine what amount constituted the superpriority portion because A&K sent only a ledger that indicated the total amount due. (ECF No. 39). Thus, in an attempt to avoid paying both the superpriority and subpriority portion, BAC estimated the superpriority portion of the lien on its own, and tendered payment for $1,440.00 (its estimation of nine-months' worth of assessments) instead of the full indicated amount of $3,765. (*Id.*). The Banks argue that the HOA's rejection of this tender invalidates the foreclosure sale. (*Id.*). The court disagrees.

BAC's act of estimating nine-months' worth of assessments was highly risky for several reasons. First, *SFR Investments* is clear in its holding that the superpriority portion of the HOA lien consists of more than just "the last nine months of unpaid HOA dues." 334 P.3d at 411. Thus, BAC's calculation was inherently flawed because it did not account for the "maintenance and nuisance abatement charges." *Id.* Second, while this calculation was done to avoid paying the subpriority amount, if BAC would have tendered payment of the entire amount, then it could have added the whole amount to the first deed of trust. *See also id.* at 418 (finding that a bank could have paid the full amount and then "request[ed] a refund of the balance").

Additionally, BAC attached restrictive terms and conditions with its tender that limited the legal rights of the HOA if payment was accepted. In BAC's letter to the HOA to which the check for $1,440.00 was enclosed, it asserts:

> [A]ny endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and an express agreement that BAC's financial obligation towards the HOA in regards to real property located at 3761 Tohono Canyon Street have now been "paid in full."

**James C. Mahan**
**U.S. District Judge**

- 11 -

(ECF No. 39-11 at 17).  BAC tendered 9-months' worth of assessments, which did not include nuisance and abatement charges, claimed that value was the superpriority amount, attached terms that would force the HOA to admit that this was the proper amount, and now claim that rejection of this improper amount that had these restrictive terms constitute rejected tender.  (ECF No. 39). The court is unpersuaded by this argument because the amount calculated was incorrect.  By attempting to calculate the amount on its own and to force the HOA into agreeing that this was the proper amount, BAC tried to create its own reality about the proper amount of the superpriority liens. In fact, BAC tendered an inaccurate amount.

Further, U.S. Bank did nothing later to prevent the property from being sold.  (ECF No. 40).  And, after failing to use the legal remedies available to defendants to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filing a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—the Banks now seek to profit from their own failure to follow the rules set forth in the statutes by invoking equitable relief.  *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

### 4. *Equitable Relief*

While this court will analyze the Banks' equitable arguments under quiet title, this court notes that the failure to utilize legal remedies, as set forth above, makes granting equitable remedies unlikely. *See Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 646 P.2d 549, 551 (1982) (declining to allow equitable relief because an adequate remedy existed at law).  Simply ignoring legal remedies does not open the door to equitable relief.

. . .

**James C. Mahan**
**U.S. District Judge**

### i. Commercial Reasonablity

The Banks contend that judgment in their favor is appropriate because the sale of the property for 7% of its fair market value is grossly inadequate as a matter of law. (ECF No. 39). The Banks further argue that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 39 at 7-8) (emphasis omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[5]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d

---

[5] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite defendants' assertion to the contrary, the *Shadow Wood* court did not adopt the restatement.  In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *and Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *and Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A).  Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test—which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale—controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness.  The few Nevada cases that have discussed commercial reasonableness generally held that "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977).  This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, the Banks fail to set forth sufficient evidence showing fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale.  Defendants rely on their repeated assertion that BAC tendered the superpriority amount in order to show fraud, unfairness, or oppression.  However, as the discussed in the previous section, the amount due, according to

**James C. Mahan**
**U.S. District Judge**

- 14 -

the ledger that A&K gave to the HOA, was $3,765. (ECF No. 39-11). Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BAC chose to tender its own calculated amount and attached terms and conditions to the amount that it sent. (*Id.*). Thus, the rejection of the tender by the HOA does not invalidate the foreclosure sale.

> ii.  *Bona Fide Purchaser*

Moreover, when sitting in equity, "courts must consider the entirety of the circumstances . . . . This includes considering the status and actions of all parties involved including whether an innocent party may be harmed by granting the desired relief." *Shadow Wood*, 366 P.3d at 1114 (citation omitted). The issue of bona fide purchaser ("BFP") status is distinct from that of the conclusiveness of deed recitals. Specifically, the issue of BFP status "concerns a buyer's knowledge of competing interests," whereas the other "concerns a statutory presumption that can be equitably overcome under *Shadow Wood*." *See, e.g.*, *Nationstar Mortg., LLC*, 184 F. Supp. 3d at 859.

A BFP is a person who purchases real property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry." *Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947) (emphasis omitted); *see also Moore v. De Bernardi*, 220 P. 544, 547 (Nev. 1923) ("The decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive."). Under Nevada law, "bona fide purchaser" means as follows:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1). "In other words, a later-obtained interest can prevail over an earlier-obtained interest where the later purchaser has no knowledge of the previous interest and records his interest first." *See Nationstar Mortg., LLC*, 184 F. Supp. 3d at 860.

1    SFR argues that it paid value for the property and took without notice of a competing or
2    superior interest in the property at the time of the foreclosure sale. (ECF No. 40). The Banks
3    provide no competent evidence sufficient to raise a genuine dispute as to SFR's status as a bona
4    fide purchaser. Rather, the Banks assert that SFR is a professional property purchaser and
5    concludes that such basis alone is sufficient to preclude SFR's status as a BFP. (ECF No. 39). The
6    Banks further assert that the fact that SFR asked for an indemnity against a defect in title, except
7    for any dispute that arose from a prior deed of trust that was in effect prior to a foreclosure sale,
8    indicates that SFR knew of a competing or superior interest in the title. (*Id.*). However, an
9    indemnification against a **potential** competing interest does not, on its own, show that there was
10   actual or constructive notice of an **actual** competing interest. *Id.* Such conclusory allegations
11   without specific facts supported by competent evidence are insufficient to raise a genuine issue for
12   trial. *See Celotex*, 477 U.S. at 324. Thus, because equitable relief is not proper in this instance,
13   and because SFR showed that the foreclosure sale was valid as it followed the deed recitals and
14   NRS 116.3116, the court will grant SFR's motion for summary judgment here.

15   **5. Due Process**

16   The Banks argue that the HOA lien statute is facially unconstitutional because it does not
17   mandate notice to deed of trust beneficiaries. (ECF No. 39). The Banks further contend that any
18   factual issues concerning actual notice is irrelevant pursuant to *Bourne Valley Court Trust v. Wells*
19   *Fargo Bank, NA*, 832 F.3d 1154. (ECF No. 39).

20   The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required an
21   HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively
22   requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne*
23   *Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne*
24   *Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that
25   unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

26   To state a procedural due process claim, defendants must allege "(1) a deprivation of a
27   constitutionally protected liberty or property interest, and (2) a denial of adequate procedural
28   protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir.

**James C. Mahan**
**U.S. District Judge**

1998). Defendants have satisfied the first element because a deed of trust is a property interest under Nevada law. *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale"). However, the Banks fail on the second prong.

Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Here, adequate notice was given to the interested parties prior to extinguishing a property right. BAC received actual notice of the default and election to sell under the homeowners association lien. (ECF No. 3) (describing the issue of the amount required for tender).

As a result, the notice of default was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) because it put the deed-of-trust holder on notice that its interest was subject to pendency of action and offered all of the required information. Thus, the Banks' motion for summary judgment will be denied as to this issue.

### 6. Retroactivity

The Banks contend that *SFR Investments* should not be applied retroactively to extinguish the first deed of trust. (ECF No. 39).

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's

1  conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*").  Thus, *SFR*
2  *Investments* applies to this case.

### 7. Injunctive Relief

The Banks and SFR both ask for summary judgment on claims of injunctive relief (ECF No. 39, 40).  The court finds no sustainable cause of action for injunctive relief.  In fact, injunctive relief is a remedy, not a claim for relief.  *See, e.g.*, *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 Fed. Appx. 680, 684 (9th Cir. 2014) (citation omitted).  Thus, the court will dismiss this claim.

### 8. Slander of Title

Under Nevada law, a slander of title claim involves (1) false and malicious communications (2) disparaging to one's title in land (3) causing special damages.  *See Higgins v. Higgens*, 744 P.2d 530, 531 (Nev. 1987) (citations omitted); *see also Rowland v. Lepire*, 662 P.2d 1332, 1335 (Nev. 1983) ("The requisites to an action for slander of title are that the words spoken be false, that they be maliciously spoken and that the plaintiff sustain some special damage as a direct and natural result of their having been spoken.").  Additionally, a defendant must know that "the statement was false or act in reckless disregard of its truth or falsity." *Rowland*, 662 P.2d at 1335.

Further, a "plaintiff alleging a claim for slander of title must meet a heightened pleading standard."  *See, e.g,*, *Velazquez v. Mortg. Elec. Registration Sys., Inc*., No. 2:11-CV-576 JCM CWH, 2012 WL 5288141, at *5 (D. Nev. Oct. 23, 2012).

Here, SFR fails to assert any statements by the Banks let alone any false words spoken by them.  SFR relies on the recorded assignments, arguing that the statements contained therein were false, but fails to provide any evidence that these recordings were maliciously filed. (ECF No. 40).  Further, while SFR asserts that U.S. Bank and Nationstar knew that the deed of trust was extinguished because of *SFR Investments*, U.S. Bank's initiation of the instant action for declaratory relief suggests the contrary.

Accordingly, SFR has failed to show that it is entitled to judgment as to this claim.

. . .

. . .

**B. Motion to Certify**

SFR requests that the court certify the following question to the Nevada Supreme Court: "Whether NRS § 116.31168(1)'s incorporation of NRS § 107.090 requires homeowners' associations to provide notices of default to banks even when a bank does not request notice?" (ECF No. 66).

The court declines to certify this question as controlling precedent is available for guidance. The Ninth Circuit, in *Bourne Valley*—which SFR cites in its motion—expressly answered this exact question in the negative. More specifically, the Ninth Circuit held, in relevant part, as follows:

> Bourne Valley argues that Nevada Revised Statute section 116.31168(1), which incorporated section 107.090, mandated actual notice to mortgage lenders whose rights are subordinate to a homeowners' association super priority lien. . . . According to Bourne Valley, this incorporation of section 107.090 means that foreclosing homeowners' associations were required to provide notice to mortgage lenders even absent a request.
> . . . .
> If section 116.31168(1)'s incorporation of section 107.090 were to have required homeowners' associations to provide notice of default to mortgage lenders even absent a request, section 116.31163 and section 116.31165 would have been meaningless. We reject Bourne Valley's argument.

*Bourne Valley*, 832 F.3d at 1159.

Accordingly, the court will deny SFR's motion to certify this question to the Nevada Supreme Court.

**IV. Conclusion**

In light of the aforementioned, the court finds that the Banks have failed to raise a genuine dispute so as to preclude summary judgment in favor of SFR on its quiet title claim. Nor have the Banks established that they are entitled to summary judgment as to their claims. The Banks have not shown proper tender, as statute and the notice itself instructed, and did not meet their burden to show that no genuine issues of material fact existed regarding the proper amount of the HOA's lien, SFR's bona fide status, constitutionally sufficient notice, or retroactivity.

Further, the court will grant SFR's motion for summary judgment (ECF No. 40) as to its quiet title claim against the Banks and Bundy, but deny the motion as to the slander of title claim; the court will also dismiss SFR's claim for injunctive relief. SFR has met its burden of

James C. Mahan
U.S. District Judge

- 19 -

1  demonstrating that there is no genuine dispute of material fact as to its quiet title claim and is
2  entitled to judgment on that issue.  Thus, SFR is entitled to a declaratory judgment that the
3  Banks' first deed of trust was extinguished pursuant to the properly conducted foreclosure sale
4  where SFR purchased the property.
5  The court will deny the Banks' motion for summary judgment.  (ECF No. 39). The court
6  will deny SFR's motion to certify question.  (ECF No. 66).
7  Accordingly,
8  IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the Banks' motion for
9  summary judgment (ECF No. 39) be, and the same hereby is, DENIED consistent with the
10  foregoing.
11  IT IS FURTHER ORDERED that SFR's motion for summary judgment (ECF No. 40) be,
12  and the same hereby is, GRANTED IN PART and DENIED IN PART consistent with the
13  foregoing.
14  IT IS FURTHER ORDERED that all claims for injunctive relief be, and hereby are,
15  DISMISSED consistent with the foregoing.
16  IT IS FURTHER ORDERED that SFR's motion to certify a question (ECF No. 66) be, and
17  the same hereby is, DENIED.
18  DATED March 15, 2017.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**